Thomas K. Loftus et al., Petitioners *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Canada Dry Bottling Co., Respondents.

Argued September 12, 1980, before Judges MENCER, CRAIG and WILLIAMS, JR., sitting as a panel of three.

*John J. Dunn, Sr.*, with him *Robert D. Mariani, Dunn & Byrne*, for petitioners.

*William Kennedy*, Assistant Attorney General, for respondent Board.

*Robert Ufberg, Rosenberg & Ufberg*, for respondent employer.

OPINION BY JUDGE MENCER, October 15, 1980:

This appeal requires us to determine whether the Unemployment Compensation Board of Review (Board) correctly concluded that appellants, members of Teamsters' Local 229 and employed by Canada Dry Bottling Company, were ineligible for unemployment compensation benefits, under the provisions of Section 402(d) of the Unemployment Compensation Law,[1] because their unemployment was due to a work stoppage caused by a strike.

Section 402(d) provides, in pertinent part, that "[a]n employe shall be ineligible for compensation for any week . . . (d) [i]n which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed. . . ."

Since we conclude that the work stoppage being considered in this appeal was the result of a strike by appellants, and not an employer lock-out, we hold that

---

[1] Act of December 5, 1936, Second Ex. Sess. P.L. (1937) 2897, as *amended*, 43 P.S. §802(d).

the Board did not err as a matter of law in affirming the referee's denial of benefits to appellants.

Our Supreme Court, in the case of *Philco Corp. v. Unemployment Compensation Board of Review,* 430 Pa. 101, 103-04, 242 A.2d 454, 455 (1968), stated:

Since the purpose of our unemployment compensation system is to compensate an individual when work has been denied him through no fault of his own, logically the test of whether a work stoppage resulted from a strike or a lock-out requires us to determine which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing. As this Court stated in Vrotney Unemployment Compensation Case, 400 Pa. 440, 444-45, 163 A.2d 91, 93-94 (1960), the question we must answer to decide on whose shoulders lay the responsibility for the work stoppage is the following: 'Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? . . .'

Here the critical facts, as found by the referee and Board,[2] were that the appellants were members of

---

[2] Although the evidence presented by the parties was, in certain aspects, conflicting, it is not this Court's function to balance that evidence. Questions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board and are not subject to reevaluation on judicial review. *Miller v. Unemployment Compensation Board of Review,* 45 Pa. Commonwealth Ct. 539, 405 A.2d 1034 (1979).

Teamsters' Local 229 (union), which is the bargaining representative for drivers, warehousemen and helpers employed by the Canada Dry Bottling Company (employer). The union and the employer had entered into a collective bargaining agreement which covered the period from May 24, 1976 to midnight, May 24, 1978. At a negotiation session held on May 22, 1978, the union advised the employer that its members would be amenable to working beyond the expiration date of the existing collective bargaining agreement if the employer would assent to making provisions in the new collective bargaining agreement retroactive to May 24, 1978, the date on which the existing agreement was to expire. The employer refused to so assent.

Union and employer bargaining representatives again met during the afternoon of May 24, 1978 but were unable to reach an accord. At this meeting, the union repeated its proposal to extend the existing collective bargaining agreement, provided that the provisions of the new agreement would be retroactive to May 24, 1978. The employer again rejected the union's offer to continue work conditioned on the retroactive coverage of a new agreement.

On May 25, 1978, the appellants began picketing the employer's premises. The employer was amenable to permitting the appellants to continue working under the terms and conditions of the collective bargaining agreement which expired on May 24, 1978, but none of the appellants entered the plant on May 25, 1978 to go to work.

In view of these findings of fact, which are supported by substantial evidence[3] in the record, we hold

---

[3] Appellants contend that the critical findings of fact were not supported by evidence. Our examination of the record discloses that there is substantial evidence resulting from the testimony of Carl Halkyer, the employer's chief negotiator, to support the findings of fact under attack. Also, testimony of witness Watkins, called by

that the appellants' failure to accept the employer's offer to permit them to continue working under the terms and conditions of the expired agreement indicates that the responsibility for the resultant work stoppage was theirs. We have held that a demand of retroactive benefits is incompatible with, and does not constitute, a bona fide offer by employees to continue work under the preexisting terms and conditions of employment as embodied in the expired agreement. *Gladieux Food Services, Inc. v. Unemployment Compensation Board of Review*, 27 Pa. Commonwealth Ct. 142, 365 A.2d 889 (1976), *rev'd on other grounds*, 479 Pa. 324, 388 A.2d 678 (1978).

Therefore, by refusing to accept the employer's offer of continued employment under unchanged terms and conditions of the preexisting agreement, the appellants refused to maintain the status quo and the resultant work stoppage must be held to be a strike. *Colonial School District v. Unemployment Compensation Board of Review*, 53 Pa. Commonwealth Ct. 30, 416 A.2d 1152 (1980). *Compare Chichester School District v. Unemployment Compensation Board of Review*, 53 Pa. Commonwealth Ct. 74, 415 A.2d 997 (1980).

Accordingly, we must affirm the Board's order.[4]

---

appellants, supports the critical finding that the appellants' willingness to continue working beyond the expiration date of the collective bargaining agreement was coupled with a demand for retroactive coverage of a new agreement. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Geesey v. Unemployment Compensation Board of Review*, 33 Pa. Commonwealth Ct. 376, 381 A.2d 1343 (1978).

[4] Appellants contend that the referee committed error when, at the hearing some three and one-half months after the occurrence of the work stoppage, he sustained an objection to a question asked a witness called by the employer. The question to which objection was made was: "Is the company willing *now* to work under the expired contract while negotiating for a new one?" (Emphasis added.) We

## ORDER

AND Now, this 15th day of October, 1980, the order of the Unemployment Compensation Board of Review, dated July 17, 1979 (Decision No. B-174074), is hereby affirmed.

are of the view that the referee made the proper ruling, since whether the employer would, in September 1978, be willing for appellants to return to work under the terms and conditions of the expired agreement is irrelevant to a determination of whether the work stoppage at its inception was attributable to the employer or the appellants.