Welex, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs, June 10, 1982, before Judges BLATT, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Herbert G. Keene, Jr.*, with him *Sandra A. Girifalco, Stradley, Ronon, Sevens & Young*, for petitioner.

*Richard Wagner*, Chief Counsel, with him *Joel G. Cavicchia*, Associate Counsel, and *LeRoy S. Zimmerman*, Attorney General, for respondent.

OPINION BY JUDGE CRAIG, July 26, 1982:

Welex, Inc., as employer, appeals from a decision of the Unemployment Compensation Board of Review, which categorized claimant Michael Maresca's departure from Welex as a discharge rather than as a voluntary quit, enabling the claimant to collect benefits under the Unemployment Compensation Act.[1]

The board's findings of fact include:

3. The claimant was discharged by his father, who was the plant manager for the claimant's employer. The claimant's father had the power to hire and fire employees, including the claimant, and there was no collusion between the claimant and his father in this matter.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §751-914 (Act). The board, after finding that the claimant had been discharged, went on to discuss whether the claimant was guilty of willful misconduct and thus ineligible for benefits under Section 402(e) of the Act, 43 P.S. §802(e). Although the board concluded that no evidence of willful misconduct existed, the employer, in its brief, clearly indicates that it has never argued that the claimant was guilty of willful misconduct. Therefore the only issue before this court involves the issue of whether the claimant was discharged or whether he voluntarily quit, as defined in Section 402(b) of the Act, 43 P.S. §802(b).

4. The claimant worked at all times to the best of his ability and would have remained employed if permitted to do so.

The employer challenges these findings, asserting that the claimant was dismissed by his father, a plant manager, following a meeting in which his father's superiors decided not to promote the claimant. The employer contends that the father, in firing the claimant, acted without authority. Furthermore, the employer argues that the claimant's failure to return to his position after becoming aware that the employer had not acceded to his "discharge" further indicates that the claimant's departure constituted a voluntary quit.

In the hearing before the referee, the claimant's father discussed the meeting involving his superiors in which the claimant's career was considered:

The purpose of that meeting we had, the three of us, was on my request to, I wanted to make [the claimant] a permanent employee, that was the purpose of the meeting and it was rejected by [the employer's vice-presidents] and the reason given was because, that [one of the vice-presidents] said that [the claimant] had an introvert personality, o.k. and for that reason I was specifically told that the purchasing manager was to be put on permanent disability effective that month and *Michael was no longer to be retained, that I was supposed to hire another purchasing manager and to replace Michael.* (Emphasis added.)

Nothing in the record supports the employer's allegation that the claimant and his father acted in collusion so that the claimant could become eligible for unemployment compensation benefits.

Furthermore, an examination of the record indicates that despite the employer's claims, there is con-

flicting testimony concerning whether the claimant was offered his position immediately following the "discharge." At the hearing, the claimant addressed the issue of whether anyone from Welex had asked him to come back to work for them:

> That's one good point I'd like to make. In that letter from the district, from their lawyer, it stated that time and time again, I was told on several occasions that my job was available and that I could come back. As of February 12, I was never told directly from anybody in Welex. The only time I was told that there was when we had that appeal and all that was stated that the job is still available.

Because we conclude that the record contains substantial evidence to support the board's findings of fact[2] and its ultimate conclusion that the claimant was discharged, the decision of the board is affirmed.

ORDER

Now, July 26, 1982, decision No. B-185431 of the Unemployment Compensation Board of Review, dated June 26, 1980, is hereby affirmed.

---

[2] Our narrow scope of review in unemployment compensation cases requires that we are bound by findings of fact supported by substantial evidence, even though evidence was also introduced to the contrary. *Martin v. Unemployment Compensation Board of Review*, 36 Pa. Commonwealth Ct. 304, 306, 387 A.2d 998, 1000 (1978). The fact that conflicting evidence is presented does not mean that there is no substantial evidence to support the eventual finding since it is the function of the board, and not this court, to resolve questions of credibility and conflicts in testimony. *Id.*